**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**EUGENE C. SMALLS,**

***Plaintiff*,**

**v.** **Case No. 5:25-CV-0466-JKP**

**ARMY AND AIR FORCE EXCHANGE- (UNITED STATES OF AMERICA),[1]**

***Defendant*.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion to Dismiss (ECF No. 52) filed by Defendant Army and Air Force Exchange Services ("AAFES"). Defendant seeks dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. There are multiple filings related to the motion: (1) Plaintiff's Response to the motion (ECF No. 56); (2) Defendant's Reply (ECF No. 59); (3) an additional response by Plaintiff (ECF No. 74); (4) filings related to Plaintiff's opposed requests to amend his complaint, which reiterate and further develop the parties' jurisdictional arguments (ECF No. 55 (Plaintiff's motion for leave to file a second amended complaint); ECF No. 65 (Defendant's response in opposition to motion for leave); ECF No. 69 (Plaintiff's motion to strike proposed second amended complaint and request to file third amended complaint); ECF No. 71 (Defendant's response in opposition to motion for leave to file third amended complaint)); and (5) Plaintiff's Corrected Third Amended Complaint (ECF No. 78). In deciding

[1] The Original Complaint (ECF No. 1) named multiple defendants: Army and Air Force Exchange Services; Transworld Systems Inc. ("TSI"), a third-party collection agency; and Supervisor Aron Fischer. The Court terminated Defendant Aron Fischer as a party after Plaintiff removed him from the First Amended Complaint. *See* ECF Nos. 49, 50. Plaintiff then requested that TSI be voluntarily dismissed from the case. *See* ECF Nos. 66, 75. TSI was unopposed to Plaintiff's request. *See* ECF No. 72. The Court construed Plaintiff's request as an unopposed motion to voluntarily dismiss the claims against TSI under Fed. R. Civ. P. 41(a)(2), granted the motion, and dismissed Plaintiff's claims against TSI. ECF No. 76. The dismissal was with prejudice to Plaintiff pursuing a claim against TSI in this case, but without prejudice to Plaintiff pursuing his claim against TSI in state court through a filing in Smalls Claims court. *Id.* at 2.

the pending motion to dismiss, the Court considers the arguments raised by the parties throughout these relevant filings, as well as the allegations Plaintiff provides in his Corrected Third Amended Complaint.[2]

After due consideration of the parties' briefing and the applicable law, the Court grants Defendant's Motion to Dismiss in part. For the reasons that follow, the Court finds that it lacks jurisdiction over Plaintiff's claims asserted under the Administrative Procedure Act ("APA"), the Truth in Lending Act ("TILA"), the Credit Card Accountability Responsibility and Disclosure ("CARD") Act, and the Fair Credit Billing Act ("FCBA"), because Defendant retains its sovereign immunity as to each claim. Thus, the Court dismisses each claim without prejudice. The Court further finds that it lacks jurisdiction over Plaintiff's breach of contract and illegal exaction claims because exclusive jurisdiction over such claims rests with the Court of Federal Claims under 28 U.S.C. §§ 1346(a) and 1491. Accordingly, the Court also dismisses these claims without prejudice.

However, the Court finds that it has federal question subject matter jurisdiction over Plaintiff's sole remaining claim under the Fair Credit Reporting Act ("FCRA").

## I. BACKGROUND

Plaintiff is a disabled military veteran. ECF No. 78 at 9. This action arises from his default on a credit card issued by Defendant and Defendant's subsequent collection efforts. *Id.* at 6-7; ECF No. 50 at 10. Specifically, Plaintiff owed the principal amount of $6,612.84 to Defendant. ECF No. 78 at 8; ECF No. 50 at 10. When Plaintiff defaulted on his credit card bills, Defendant reported him to a credit reporting agency. ECF No. 78 at 18; ECF No. 50 at 10. Defendant sold Plaintiff's debt to Transworld Systems Inc. ("TSI"), a third-party collection agency. ECF No. 50 at 10.

[2] The Court previously instructed the parties it would consider arguments raised through related filings in conjunction with the pending motion to dismiss. *See* Text Order dated Jan. 13, 2026. The Court further ordered that Plaintiff's Corrected Third Amended Complaint (ECF No. 78) "will be considered in conjunction with the pending motion to dismiss, without the need for Defendant to file any further response." *See* Text Order dated Feb. 4, 2026.

Defendant also collected on Plaintiff's debt by referring the debt to the Department of Treasury "to offset [Plaintiff's] federal income tax refunds." *Id.*; ECF No. 78 at 17; ECF No. 1-23 (Plaintiff's exhibit showing payments through the Treasury Offset Program).

Plaintiff accrued interest charges and other fees as he failed to timely pay off his debt. ECF No. 50 at 10-14; ECF No. 78 at 6-17. Plaintiff disputed these charges, claiming they were not authorized under his credit card contract with Defendant. *Id.* But despite his disagreement with the charges and fees, Plaintiff eventually made payments to Defendant. *Id.* He now seeks the return of these "illegal overpayments." ECF No. 50 at 3; *see also* ECF No. 78 at 12 (Plaintiff stating he is seeking "the return of any and all overpayments that AAFES received in excess of the proper amount due"). Plaintiff contends his alleged overpayments to Defendant were illegal for various reasons, including that (1) the agreement he signed when applying for the credit card did not authorize the charges, ECF No. 50 at 8, 17-18 & ECF No. 78 at 9, 12;[3] (2) the fees were "excessive" and exceeded Defendant's authority to impose fees under consumer protection statutes, ECF No. 50 at 7 & ECF No. 78 at 12; (3) Defendant did not disclose information about interest rates, the "consequences of delinquency," or the various fees that Defendant was authorized to charge to delinquent accounts, ECF No. 50 at 13; and (4) Defendant improperly charged fees after Plaintiff's account was "closed" or "charged-off," ECF No 50 at 9, 19 & ECF No. 78 at 14. Plaintiff further contends Defendant failed to timely respond to Plaintiff's written disputes regarding unauthorized charges and failed to conduct proper investigations into Plaintiff's disputes. ECF No. 78 at 14. He additionally alleges Defendant made inaccurate and misleading reports to credit bureaus related to his delinquency. For example, Plaintiff alleges Defendant reported "inflated" or "unauthorized"

[3] Defendant attaches a copy of the "Account Opening Disclosures" and "Exchange Credit Program Agreement" as an exhibit to its motion to dismiss. ECF No. 53-1. Defendant claims Plaintiff agreed to the terms and conditions within the agreement when he applied for and received the Military Star credit card. ECF No. 52 at 1 n.1. Plaintiff agrees that he "signed an agreement that clearly outlined all the terms and conditions," but he disputes the authenticity of Defendant's exhibit and claims he never signed the specific document provided by Defendant. ECF No. 74 at 9.

amounts of debt and failed to timely and accurately disclose when Plaintiff's "charged-off account was paid in full." *Id.* at 9.

Based on these allegations, Plaintiff asserts the following against Defendant: (1) claims under the APA, 5 U.S.C. §§ 702-06; (2) claims under the TILA, 15 U.S.C. §§ 1601–1667f, for "breach of [the] credit card agreement," improper disclosures, and failing to conduct proper investigations into Plaintiff's charge disputes, ECF No. 78 at 17-19; (3) violations of the FCRA, 15 U.S.C. § 1681, based on inaccurate reporting to credit bureaus and failing to conduct proper investigations into Plaintiff's charge disputes, *id.* at 11; (4) violations of the FCBA based on alleged billing errors and inadequate investigations into Plaintiff's charge disputes, *id.* at 12, 14; (5) claims under the CARD Act for imposing unreasonable and excessive fees, *id.* at 17; and (6) claims under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), for Defendant's "breaches of the AAFES store credit card agreement" and the "illegal exaction" of Plaintiff's money, *see id.* at 4.[4]

Plaintiff seeks monetary relief through damages to compensate for harm caused by Defendant's collection efforts and reimbursement of all overpayments Plaintiff made to Defendant. *Id.* at 22-23. Plaintiff also requests "a declaratory judgment affirming [his] legal right" to the reimbursement and an order requiring Defendant to investigate Plaintiff's billing disputes. *Id.* at 9, 14.

## II. MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256

[4] Plaintiff raised various state law claims in his First Amended Complaint, including violations of Texas and Florida Debt Collection and Consumer Protection laws. However, Plaintiff voluntarily and expressly abandoned state law claims against AAFES. *See* ECF No. 56 at 8 (Plaintiff conceding that he "can[not] establish a waiver of sovereign immunity under . . . either Florida or Texas state law"); ECF No. 68 at 6 (Plaintiff stating that "state law does not apply to AAFES").

(2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). A "court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Courts have "the power to dismiss for lack of subject matter jurisdiction based on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *accord Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019); *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). When determining issues of subject matter jurisdiction, the courts "may consider outside matter attached to a motion to dismiss without first converting it into a motion for summary judgment." *State of Ala. ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir. 1973).

The Fifth Circuit has long distinguished between "facial" and "factual" jurisdictional attacks. *See Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials.'" *Id.* When faced with a factual jurisdictional attack, "a plaintiff 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Id.* (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989) (internal quotation marks and footnotes

omitted), *aff'd sub nom.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)).

For factual attacks, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413 (quoting *Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3rd Cir. 1977)). On the other hand, a facial attack requires the courts to "consider the allegations of the complaint as true." *Id.* "Regardless of the nature of the attack, the plaintiff seeking a federal forum 'constantly bears the burden of proof that jurisdiction does in fact exist.'" *Chandler v. United States*, 338 F. Supp. 3d 592, 599 (N.D. Tex. 2018) (quoting *Ramming*, 281 F.3d at 161).

Here, Defendant makes a factual jurisdictional attack by presenting evidence with its motion to dismiss. *See* ECF No. 53-1. Accordingly, the Court does not presume the truthfulness of any allegation of Plaintiff and determines whether jurisdiction exists by examining the complaint as supplemented by undisputed facts evidenced in the record. The Court also considers Plaintiff's exhibits attached to his original complaint as part of the record. *See* ECF No. 78 at 1 (Plaintiff requesting that the Court continue to consider the exhibits attached to his original complaint when assessing amended complaints).

## III. JURISDICTION

A federal court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331. This federal question jurisdiction is properly invoked by pleading a cause of action that arises under the laws of the United States. *See Bell v. Hood*, 327 U.S. 678, 681-85 (1946). A claim "arises under" the laws of the United States when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,

463 U.S. 1, 27-28 (1983).

Because Defendant is an agency of the federal government, this case hinges on the doctrine of sovereign immunity. *See Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 733-34 (1982) (explaining that the AAFES, as a federal agency, enjoys the same immunity as the federal government itself). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). In general, courts "strictly construe" waivers of sovereign immunity and "resolv[e] all ambiguities in favor of the sovereign." *Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020).

## IV. ANALYSIS

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendant moves for the Court to dismiss Plaintiff's APA, TILA, CARD Act, and FCBA claims for lack of jurisdiction because Plaintiff has not established any waiver of sovereign immunity. ECF No. 52 at 2-4; ECF No. 71 at 3-4. Defendant also contends that the Court lacks jurisdiction over Plaintiff's claims brought under the Little Tucker Act because exclusive jurisdiction rests in the Court of Federal Claims. ECF No. 52 at 5. For the reasons explained below, the Court agrees with Defendant, except the Court finds that it does have jurisdiction over Plaintiff's remaining claim under the FCRA.

### A. APA Claims

Section 702 of the APA provides a waiver of sovereign immunity by stating that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," and the action "shall not be dismissed nor relief therein be denied on the ground that it is against the United States." 5 U.S.C. § 702. But Section 702's waiver of immunity applies only when a plaintiff

overcomes several jurisdictional hurdles. One such hurdle ultimately precludes the Court's APA jurisdiction in this case: the APA authorizes judicial review only of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. An "alternative remedy need only be adequate." *De La Garza Gutierrez v. Pompeo*, 741 F. App'x 994, 998 (5th Cir. 2018) (per curiam). There is no requirement for the alternative remedy to be as effective as an APA lawsuit according to 5 U.S.C. § 704. *Id.*

Plaintiff himself provides the Court with the adequate alternative remedy precluding his claims under the APA: claims under the Tucker Act, or its companion statute, the Little Tucker Act. *See* 28 U.S.C. §§ 1346(a), 1491. At bottom, Plaintiff asserts he is entitled to recover money that Defendant unlawfully required him to pay based on the imposition of unauthorized and excessive credit card fees. He further complains that he deserves reimbursement because Defendant has "unlawfully taken his tax refund" through the offset of his federal tax returns. ECF No. 78 at 11. Plaintiff thus presents a classic "illegal exaction" claim falling under the Tucker Act. *See Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996) ("Tucker Act claims may be made for recovery of monies that the government has required to be paid contrary to law."); *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (explaining that "[t]he classic illegal exaction claim [under the Tucker Act] is a tax refund suit alleging that taxes have been improperly collected or withheld by the government"). Ultimately, through a successful Tucker Act Claim, Plaintiff may obtain the very thing he seeks—a monetary award of the sum Plaintiff contends Defendant improperly seized from him while collecting on his debt.[5] *See* 28

[5] Plaintiff's principal form of requested relief is monetary. Plaintiff brings this action because he contends Defendant should be required to return money Plaintiff paid through unauthorized fees and improper tax offsets. However, Plaintiff presents a few passing requests for equitable relief, such as a "declaration" that he is entitled to his requested reimbursement and "an injunction" requiring Defendant to investigate Plaintiff's complaints regarding unauthorized charges. *See* ECF No. 78 at 14. The Court finds that such requests do not render an action in the Court of Federal Claims inadequate, since the requests for equitable relief appear to be inextricably intertwined with and collateral to Plaintiff's overarching requests for monetary relief. *See* 28 U.S.C. § 1491(a)(2) (conferring limited equitable powers on the Court of Federal Claims if equitable orders are necessary for complete relief and if they are "incidental of and collateral to" the judgment); *see also Simanonok v. Simanonok*, 918 F.2d 947, 952 (Fed. Cir. 1990) ("[I]njunctive

U.S.C. §§ 1346(a) & 1491 (allowing for lawsuits against the federal government for monetary damages based on contract claims and claims where plaintiffs seek the return of money paid to the government).

Moreover, as explained below, Plaintiff's claims meet the conditions under the Little Tucker Act for exclusive jurisdiction with the Court of Federal Claims. Thus, because the Court of Federal Claims has subject matter jurisdiction over Plaintiff's claims seeking reimbursement of alleged overpayments and unlawful offsets, Plaintiff has an adequate alternative remedy that precludes this Court from exercising jurisdiction over APA claims. *Cf. Reich v. Berryhill*, No. 3:18-CV-2946-B, 2019 WL 2772114, at *4 (N.D. Tex. July 2, 2019) (finding Tucker Act would provide an adequate alternative remedy to APA claim if the claim met elements for Tucker Act jurisdiction, but ultimately finding the claim did not meet each element); *see also Astakhov v. U.S. Citizenship & Immigr. Servs.*, 698 F. Supp. 3d 135, 146 (D.D.C. 2023) (finding that Tucker Act and Little Tucker Act provided adequate remedies for plaintiffs raising APA claims and alleging United States Citizenship and Immigration Services unlawfully charged $410 filing fee to apply for employment authorization).

Accordingly, because Plaintiff has an adequate alternative remedy under the Tucker Act, Plaintiff's APA claims are barred by sovereign immunity and are dismissed without prejudice.

**B. TILA, CARD Act, and FCBA Claims**

The TILA does not provide an express waiver of sovereign immunity. Instead, the TILA preserves sovereign immunity by stating, "[n]o civil or criminal penalty provided under this subchapter for any violation thereof may be imposed upon the United States or any department or agency thereof, or upon any State or political subdivision thereof, or any agency of any State or

---

claims . . . are not cognizable in a Little Tucker Act or Tucker Act case, absent a concurrent colorable claim for monetary recovery.").

political subdivision." 15 U.S.C. § 1612(b); *see also Moore v. U.S. Dep't of Agric. on Behalf of Farmers Home Admin.*, 55 F.3d 991, 994 (5th Cir. 1995) (recognizing that "Congress . . . expressly preserved the United States' sovereign immunity against TILA claims" under 15 U.S.C. § 1612(b)). Accordingly, Defendant is immune from Plaintiff's TILA claims.

There is also no express waiver of immunity in either the CARD Act or the FCBA. Both the CARD Act and the FCBA were enacted as amendments to the overarching TILA statute. *See* Credit Card Accountability Responsibility and Disclosure Act of 2009, Pub. L. No. 111-24, 123 Stat. 1734 (2009) (full statutory title of the CARD Act stating that it is "An act to amend the Truth in Lending Act . . .."); Fair Credit Billing Act, Pub. L. No. 93-495, tit. III, 88 Stat. 1511 (1974) (§ 302 stating the purpose of the FCBA includes to amend specific provisions of the TILA to "protect the consumer against inaccurate and unfair credit billing and credit card practices"). Neither amendment impacted the explicit preservation of immunity outlined in 15 U.S.C. § 1612(b). *See* Credit Card Accountability Responsibility and Disclosure Act, 123 Stat. 1735 (outlining amendments to TILA including requirement that creditors give a 45-day notice of interest rate changes); Fair Credit Billing Act, 88 Stat. 1511 (§ 304 listing amendments to TILA creating a new procedural framework for handling billing disputes). As such, any claims under the CARD Act or the FCBA fall under the same TILA statutory framework and thus are barred by the immunity provided in 15 U.S.C. § 1612(b).

Because Plaintiff cannot show a waiver of sovereign immunity for his claims under the TILA, CARD Act, or the FBCA, the Court dismisses each claim without prejudice for lack of jurisdiction.

**C. Breach of Contract and Illegal Exaction Claims**

Plaintiff brings claims for breach of the credit card agreement and Defendant's alleged "illegal exaction" of Plaintiff's money. ECF No. 78 at 4. He contends that this Court has jurisdiction over these claims under the Little Tucker Act. *Id.* "The Tucker Act provides that '[t]he

United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.'" *Sammons v. United States*, 860 F.3d 296, 298 (5th Cir. 2017) (quoting 28 U.S.C. § 1491(a)(1)). And the Little Tucker Act permits district courts to exercise jurisdiction, "'concurrent with the United States Court of Federal Claims,' [over] a 'civil action or claim against the United States, not exceeding $10,000 in amount," for claims covered under the Tucker Act. *United States v. Bormes*, 568 U.S. 6, 10 (2012) (quoting 28 U.S.C. § 1346(a)(2)); *United States v. Mitchell*, 463 U.S. 206, 212 n.10 (1983) (citing 28 U.S.C. § 1346(a)(2)) ("The Tucker Act provided concurrent jurisdiction in the district courts over claims not exceeding $10,000.").

To determine whether it has jurisdiction, the Court must evaluate whether three conditions set forth in the Tucker Act exist. *Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 359 (5th Cir. 1987). Those conditions, if satisfied, vest subject matter jurisdiction exclusively in the Court of Federal Claims. *Id.* They include whether: (1) the action is against the United States; (2) the action is founded upon the Constitution, federal statute, executive regulation, or government contract; and (3) the action seeks monetary relief in excess of $10,000. *Id.*

Plaintiff's action satisfies the conditions to vest jurisdiction exclusively in the Court of Federal Claims. First, this action is against an agency of the United States. "The Army and Air Force Exchange Service is a recognized agency of the United States," *Martin v. Hyundai Translead, Inc.*, No. 3:20-CV-2147-K, 2020 WL 6701806, at *2 (N.D. Tex. Nov. 13, 2020), and suits against "federal agencies . . . are suits against the United States," *Maleche v. Solis*, 692 F. Supp. 2d 679, 685 (S.D. Tex. 2010). Second, Plaintiff's claims seeking reimbursement of overpayments are founded upon a government contract—the credit card agreement Plaintiff signed

when he applied for the Military Star card. *See Reich v. Berryhill*, No. 3:18-CV-2946-B, 2019 WL 2772114, at *4 (N.D. Tex. July 2, 2019) (finding second Tucker condition satisfied when dispute centered on a "service agreement" between plaintiff and Social Security Administration). Finally, Plaintiff seeks more than $10,000. He seeks reimbursement of all the allegedly unauthorized charges and overpayments, as well as additional compensatory damages in an unspecified amount. While Plaintiff does not provide the Court with the total amount of money he asserts he overpaid, his allegations taken together, as well as the evidence attached to his Original Complaint, make clear that he seeks reimbursement of some amount greater than $10,000. *See, e.g.*, ECF No. 50 ¶ 98 (Plaintiff alleging he made an overpayment of $13,817.38 to TSI); ECF No. 1-13 (Plaintiff's Exhibit F showing charges and other transactions totaling an amount greater than $10,000). Plaintiff also seeks reimbursement for the offsets made by the Department of Treasury after Defendant referred his debt to the Treasury Offset Program. *See* ECF No. 78 at 11 (Plaintiff alleging Defendant "has unlawfully taken his tax refund, resulting in an excess amount beyond what was due"). Plaintiff's own evidence shows that the Department of Treasury's offsets exceed $10,000. *See* ECF No. 1-23 (Plaintiff's Exhibit P showing $13,885.07 in offset amounts through the Treasury Offset Program).[6]

Accordingly, the Tucker Act vests exclusive jurisdiction over Plaintiff's breach of contract and illegal exaction claims with the United States Court of Federal Claims. The Court thus dismisses these claims without prejudice.[7]

---

[6] Attempting to avoid the Court's dismissal of his Little Tucker Act claims, Plaintiff asserts in conclusory fashion in a response that "it is important for the Court to keep in mind that [he] is not seeking relief for funds exceeding $10,000; the amount is significantly below that threshold." ECF No. 74 at 2. But this unsubstantiated assertion is squarely rebutted by Plaintiff's own allegations and evidence described above.

[7] The Court rejects Plaintiff's suggestion that the Court transfer his claims to the Court of Federal Claims under 28 U.S.C. § 1631. *See* ECF No. 74 at 2. Ultimately, the Court finds that it would not be "in the interest of justice" to sever and transfer claims that could have been brought in the Court of Federal Claims while this Court retains jurisdiction over other claims. *Id.* Such a transfer allowing Plaintiff to pursue simultaneous litigation in different courts would only create piecemeal litigation and risk duplicated efforts, conflicting rulings, and wasted judicial resources.

**D. FCRA Claim**

In his Corrected Third Amended Complaint, Plaintiff raises a claim under the FCRA, alleging that Defendant violated the Act "by reporting inaccurate, misleading, inflated, or unauthorized amounts to the credit bureaus after [Plaintiff's] dispute was raised." ECF No. 78 at 11. He further contends that Defendant violated 15 U.S.C. § 1681 by "failing to investigate and correct the inaccurate 'charge-off' data." *Id.* Plaintiff did not raise FCRA claims in any of his previous complaints. Accordingly, Defendant's pending Motion to Dismiss (ECF No. 52), which Defendant filed in response to Plaintiff's First Amended Complaint (ECF No. 50), does not address or challenge the Court's jurisdiction regarding claims under the FCRA. And none of the parties' subsequent briefing related to the motion to dismiss addresses the Court's jurisdiction under the FCRA, as Plaintiff did not raise his FCRA claim until after those filings. *See* ECF Nos. 55, 56, 59, 65, 69, 71, 74.

Without the benefit of briefing from the parties, the Court finds that it has subject matter jurisdiction over Plaintiff's FCRA claim. The claim arises under a federal law, vesting this Court with federal question subject-matter jurisdiction under 28 U.S.C. § 1331. Furthermore, the Supreme Court has instructed that the FCRA effects a clear waiver of sovereign immunity and, thus, a plaintiff may sue a federal agency for violating its terms. *See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 50 (2024). Finally, Plaintiff's FCRA claim does not fall within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act. Instead, that Court (the Court of Federal Claims) has made clear that it lacks jurisdiction to consider FCRA claims, since the FCRA has its own detailed remedial scheme that excludes alternative relief under the general provisions of the Tucker Act. *See Stephens v. United States*, 165 Fed. Cl. 341, 351 (2023) (holding FCRA does not confer jurisdiction on Court of Federal Claims).

Accordingly, the Court will not dismiss Plaintiff's remaining claim under the FCRA at this

time.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss (ECF No. 52). The Court grants the motion only to the extent it requests the dismissal of Plaintiff's claims under the APA, the TILA, the CARD Act, and the FCBA, as well as Plaintiff's claims for breach of contract and illegal exaction under the Little Tucker Act. It denies the motion to dismiss to the extent it asks the Court to dismiss Plaintiff's action in its entirety. As asserted by Plaintiff in his Corrected Third Amended Complaint (ECF No. 78 at 11), his alleged FCRA violations survive the motion to dismiss.

Based on these rulings, the Court returns this case to the Magistrate Judge for further case management, including whether to lift the current stay. If Defendant views Plaintiff's FCRA claim as jurisdictionally deficient, it may present its jurisdictional challenge by proper motion filed on or before October 2, 2026.

**IT IS SO ORDERED this 18th day of September 2026.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**